William A. Williamson, Appellee, v. Hirsh, Stein & Company, Appellants.

Gen. No. 14,372.

1. VERDICTS—*when set aside.* A verdict manifestly against the preponderance of evidence will be set aside on review.

2. TRIALS—*when remarks of counsel ground for reversal.* A reference to the defendants in a case as a wealthy concern is highly improper, and where not justified by any evidence in the cause may constitute ground for reversal, notwithstanding an objection to such remarks has been sustained by the trial court.

Assumpsit. Appeal from the Municipal Court of Chicago; the Hon. WILLIAM N. GEMMILL, Judge, presiding. Heard in this court at the March term, 1908. Reversed and remanded. Opinion filed March 22, 1909.

**Statement by the Court.** This is an appeal from a judgment rendered in an action of assumpsit by William A. Williamson against Hirsh, Stein & Co. The declaration consists of the common counts. The defendant pleaded the general issue. The jury found for the plaintiff and assessed his damages at the sum of $1,422.25. The defendants moved for a new trial, which motion the court overruled and rendered judgment on the verdict.

It appears from the evidence that the defendants, Morris M. Hirsh, William A. Hirsh and William D. Stein, doing business in the firm name of Hirsh, Stein & Co., are manufacturers of glue and gelatine, and have a factory for such manufacture at Hammond in the State of Indiana. The plaintiff, William A. Williamson, testified that for twenty-three years, twenty of them in the city of Chicago, he had been engaged in the glue and gelatine business, and that, prior to going into business for himself, he had been in the employ of Winslow Brothers & Smith, for whom he acted as manager. It is not clear from the evidence whether, at the time of the transactions hereinafter referred to, the plaintiff was in business for himself,

or whether he had merely determined to go into business for himself, his employers, Winslow Brothers & Smith, having sold out their business. This, however, we do not think material.

The plaintiff relies on a conversation which he says he had with Mr. William A. Hirsh, one of the defendants, about February 15, 1906. The plaintiff testified that, while in the employ of Winslow Brothers & Smith, he had, as manager for the last-named firm, purchased goods from the defendants, dealing with Harry Epstein, their salesman; that some time between February 1st and March, 1906, Mr. Hirsh called at his office, and said he wanted to substantiate what Epstein had been talking to him, Hirsh, about, in regard to plaintiff going into business, and said that he, plaintiff, seemed to have considerable influence with the National Biscuit Company, and that defendants wanted a contract with that company, and that it was immaterial to him, Hirsh, how they got it, so that it would be secured, and that he wanted plaintiff to help defendants secure the contract, and to use his influence to that end, and if plaintiff could get it better in his name, all right, that defendants did not care how they got it, so they got it; that the price Winslow Brothers & Smith paid would remain good for the year, and the difference between that price and the contract price with the National Biscuit Co. would be plaintiff's compensation. Plaintiff further testified, in substance: He said he would like to have me use my influence in behalf of defendants, and asked how soon I would see the purchasing agent of the National Biscuit Co., and I said immediately, and I went to see Mr. Evans and had a talk with him. Winslow Brothers & Smith paid ten and one-half cents per pound for the goods, to the defendant. Mr. Hirsh said he was in earnest, and left it to me to determine which way the contract could be best secured, by taking it in my name or in the name of the defendants. Prior to the time of the conversation with Hirsh I

had no talk with Mr. Epstein in regard to the National Biscuit Co. The foregoing is, in substance, what was said. Pursuant to the conversation with Mr. Hirsh I went to see Mr. Evans, the purchasing agent of the National Biscuit Co., and had a talk with him. I saw him, possibly, five or six times. Witness further testified that he had no further conversation with Mr. Hirsh, and proceeded to state at great length a conversation which he had with Mr. Epstein, the substance of which is as follows: Mr. Hirsh had said that Epstein was out of the city, but would be back soon, and would call to see me. Epstein came to my office about February 15th; it might have been March 1, 1906. He said he had had a short talk with Mr. Hirsh, who told him he had been to my office and had taken up with me the matter of a contract with the National Biscuit Co., and asked me what Mr. Hirsh had said, and I told him—(here the witness relates substantially his former testimony as to what Mr. Hirsh said to him). Mr. Epstein said that was what Mr. Hirsh had told him, and asked if I had been to see the purchasing agent of the National Biscuit Co., and I said I had, and that he, Evans, did not feel over lukewarm toward doing business with defendants; that the year before he had some trouble with him, Epstein, and that he did not want to do any more business with defendants than he could help. I told him I felt confident there would be no question in regard to securing the contract, and said it would be well for him to go and see Mr. Evans. I next talked with Mr. Epstein, about March 1st. He said he had seen Evans and felt encouraged, and Evans had invited him to call again, and he asked me to go and see Evans, which I did. He told me that he had made a price of eleven and one-half cents, and I said it was not necessary to cut the price. Witness goes on to tell that he had a third visit from Epstein and that Epstein said matters looked favorable, and he told Epstein that he had called on Evans, and told him what Evans had

said to him, and that the prospects of defendants getting the contract seemed favorable. Finally, witness says that he called up Mr. Epstein one day, and told him that Mr. Evans had decided to give defendants the contract, and made an appointment with him to lunch at the Briggs House, and another appointment for the evening, at the Sherman House, where he met and congratulated him, and Epstein said it was all right, that he had the contract. About May 1, 1906, he talked with Epstein, and he, Epstein, said that he had the matter of commissions up with Mr. Hirsh, that everything would be all right, and for plaintiff not to be in a hurry about it, to let it go till the first of the year, and he, Epstein, would see that plaintiff would have a settlement. In the meantime plaintiff had purchased glue from defendants which had not been paid for, and, about February 1, 1907, plaintiff, by Epstein's invitation, went to defendants' office, and found Mr. Hirsh busy, and Epstein apologized and said he would like to make an appointment for another day, which he failed to do. About August 21st, witness thinks, Mr. Hirsh telephoned plaintiff in regard to his account with defendants, and he asked Mr. Hirsh what he was going to do about plaintiff's account with them, and he, Hirsh, asked what he meant—the National Biscuit Co. deal? And the witness said, "Certainly, there is nothing else between us", and he said: "So far as the National Biscuit Co. is concerned, you can go plumb to hell. We won't pay you a damn cent. If you don't pay that account of yours within three days, we will sue you," and witness told him to sue and be damned.

On cross-examination of the plaintiff the following questions were asked and answers made:

"Q. Then as you understood the arrangement, you were not to receive any commission or any compensation unless they secured this contract through your influence?

A. There was nothing of that kind said. All I had to do was to use my influence.

Q. Whether your influence resulted in procuring the contract or not, you were to be paid commissions?

A. They wanted me to get the contract.

Q. Whether the contract was procured through your influence or not, you were to receive commissions, if they got the contract?

A. That was his proposition.

Q. Did you put in a bid? A. I did.

Q. In whose name?

A. Hirsh, Stein & Company.

Q. Did you put in a bid for Hirsh, Stein & Company?

A. I did.

Q. With whom did you put in your bid for Hirsh, Stein & Company?

A. Mr. Evans. I did not put in any bid in my own name, or in the name of any one except Hirsh, Stein & Company. I put in the bid for Hirsh, Stein & Company on my first visit after Mr. Hirsh was in my office. I should say in February—the 15th of February. I saw Mr. Epstein within a week after that time''.

The evidence shows that April 5, 1906, a contract in writing between the defendants and the National Biscuit Co. was executed, for the delivery by defendants to the company, for one year from June 12, 1906, of such quantity of gelatine as would cover all the requirements of the company, at the price of eleven and one-half cents per pound, and the evidence is that defendants delivered to the National Biscuit Co. 280,458 pounds under the contract.

Henry J. Evans, purchasing agent of the National Biscuit Co., called by the plaintiff, testified, in substance, that he never had any talk with the plaintiff about securing the contract for defendants, or about any contract with defendants; that previous to the time plaintiff told him that his firm had sold out, he used to come to witness' office, and they talked generally about gelatine matters, and Hirsh, Stein & Co. were mentioned as being in the gelatine business, but this was before any question about the contract came up. Witness further testified that plaintiff talked to

him about the contract, but did not say who it was for; that he said he had a good house and would like to figure on the contract, but did not bid for himself or any one else; that, as matter of fact, he had no chance to bid. As to how the contract happened to be made with defendants, witness testified that he took the matter up early in the year, and sent a letter to various parties, one of which he sent to defendants, which is as follow:

"March 22, 1906.

STEIN, HIRSH & COMPANY,
    Hammond, Indiana.

GENTLEMEN: We are taking up the matter of a Gelatine Contract for another year. Our present contract expires June 12th, and we would like your figures and a sample of the gelatine you propose to furnish us. You are familiar with the kind we used last year as we understand you are the manufacturers. Our consumption last year, from February 1st to February 1st was 231,578 pounds. If we use your gelatine it will have to be direct and not through any jobbers.

Your prompt reply will oblige,
        Yours very truly,
            NATIONAL BISCUIT COMPANY,
                PURCHASING DEPARTMENT,
                    H. J. EVANS,
                        Manager".

Witness testified that the only way he could make the contract was by response to the letter. March 20, 1906, Epstein wrote to witness a letter making proposals for the contract, which were accepted, with the result that the contract heretofore mentioned was executed. The witness was questioned and answered as follows:

"Q. You listened to what he had to say; are you absolutely positive that he did not mention Stein, Hirsh & Company?

A. I am dead positive. I will swear Mr. Williamson never said to me a word about trying to get me

to make a contract with Hirsh, Stein or Stein, Hirsh, now, that I am positive of".

Witness further testified that Mr. Epstein procured the contract, and that no one else had anything to do with it.

William A. Hirsh, called by defendants, testified, in substance, that, in the conversation with plaintiff, he told him if he got the contract with the National Biscuit Co. for defendants, he would pay him the difference in price, by which he 'meant the difference between the price in the contract with the National Biscuit Co. and what defendants would charge plaintiff, and that no price was mentioned. When witness saw the letter of the Biscuit Company, he sent Mr. Epstein to the company. The witness, having been recalled, testified that, in his conversation with plaintiff, he did not state to plaintiff that he would like to have him use his influence with the National Biscuit Co. on behalf of defendants; that nothing was said in the conversation about influence, or using influence.

Harry Epstein, called by defendants, contradicted plaintiff's testimony as to the conversation between him and the plaintiff in, substantially, every material particular. He denied that he told plaintiff that Mr. Hirsh had told him that he had taken up the matter of the contract with plaintiff; that he did not ask plaintiff whether he had seen Mr. Evans about the contract, nor did plaintiff tell him that he, witness, should go and see Evans; nor did he, witness, ask plaintiff to see Mr. Evans; nor did witness ever confer with plaintiff in reference to plaintiff procuring the contract for defendants. He told witness, a few months after defendants had procured the contract, that he told Evans that he wanted defendants to have the contract. About a month after the contract was made, witness was at plaintiff's office and, in discussing matters generally, plaintiff, to whom defendants had given credit, asked witness if he could not procure for him, from defendants, longer terms of credit,

and said he thought he had something coming from defendants on account of the contract with the National Biscuit Co., and witness asked him if compensation had been promised him, and he said it had, and that was the first and only time that witness heard anything about his connection with the matter. Witness also denies having told plaintiff, when he met him at the Sherman House, that defendants had obtained the contract.

STEIN, MAYER & STEIN, for appellants.

HUGH R. STEWART and ARNOTT STUBBLEFIELD, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Counsel for the defendants contend that the verdict is contrary to the preponderance of the evidence; that the court erred in rulings on evidence, and that plaintiff's counsel made improper and prejudicial remarks in his argument to the jury.

As to the weight of the evidence, the case stands thus: The plaintiff and William A. Hirsh are interested witnesses, and the plaintiff's testimony is flatly contradicted by Mr. Hirsh. The plaintiff testified that Mr. Hirsh said that, if plaintiff would use his influence to procure the contract with the National Biscuit Co., he should be compensated in a certain manner, while Mr. Hirsh testified positively that nothing whatever was said about influence, or about plaintiff using his influence, and that he, Mr. Hirsh, told plaintiff that if he, plaintiff, should get the contract from the National Biscuit Co. they would handle it for him, and pay him the difference in price. The testimony of Mr. Evans, a disinterested and apparently candid witness, is that the giving the contract to defendants was not, in the least, owing to any influence of the plaintiff; that plaintiff did not even mention defend-

ants to him in connection with the contract, and did not bid for the contract in his own or defendant's name, or at all. Mr. Epstein, also a disinterested witness, contradicted the plaintiff's testimony almost *in toto*. The testimony of the two disinterested witnesses is corroborative of that of Mr. Hirsh. The plaintiff is, substantially, the only witness who testified in his own favor.

In Peaslee v. Glass, 61 Ill. 94, it is said: "It belongs to the plaintiff to make out a case. The burden of proof is upon him, and where the issue rests upon the sworn affirmation of one party and the sworn denial of the other, both having the same means of information and both unimpeached, and testifying to a state of facts equally probable, a conscientious jury can only say that the plaintiff has failed to establish his claim. Without saying that this court would set aside a verdict for the plaintiff, rendered in such cases, on the ground alone that it was not sustained by the evidence, we must set aside one resting only upon the evidence of the plaintiff when that is contradicted not only by the defendant, but also by another witness, and there are no elements of probability to turn the scale". The case is cited with approval in a number of subsequent cases. It is not necessary, however, to rely on Peaslee v. Glass in support of our conclusion. Were there no such case, our conclusion in respect to the weight of the evidence would be the same, viz.: that the verdict is manifestly against the preponderance of the evidence.

Mr. Evans, when called as a witness for plaintiff, was questioned and answered, on his direct examination, as follows:

"Q. Did he ever talk with you about securing the contract for the next year?

A. Yes, sir. We entered into a contract with Hirsh, Stein & Co. for the purchase of the gelatine. Here it is".

Counsel for defendants object that the court, on

cross-examination of the witness, refused to allow him to be asked what was the talk or conversation referred to by him, in the foregoing answer; but we fail to find in the record that any such question was asked, and, subsequently, the court permitted the question to be asked as to whether the witness had any talk, at that time, with plaintiff, about securing the contract for defendants, and the witness answered, "No, sir". We find no prejudicial error in the ruling.

Plaintiff's counsel, in his address to the jury, said: "Now, we find the situation substantially this; the situation of affairs. Hirsh, Stein & Co. are manufacturers of gelatine here, large manufacturers, a wealthy concern." On objection, the court ruled against the remarks, stating there was nothing in the record showing defendants to be a wealthy concern. The reference to defendants as a wealthy concern was highly improper, and we cannot tell but that it was prejudicial to the defendants, as it was calculated to be. Chicago Union Trac. Co. v. Lauth, 216 Ill. 176, 183. Assuming that counsel for plaintiff intended no wrong, he must have forgotten the evidence, as in several instances he misstated it to the disadvantage of the defendants. The verdict of the jury is inexplicable. If the plaintiff was entitled to recover, then, in accordance with his testimony as to what the contract was, he was entitled to recover one cent per pound on 280,458 pounds, or $2,804.58, but he is awarded only $1,422.25 by the verdict. We have avoided, as far as possible, commenting on the evidence, as the case must be remanded.

The judgment will be reversed and the cause will be remanded, appellants to recover their costs of this court.

*Reversed and remanded.*